Walton *v.* Greenwood.

SYLVESTER J. WALTON, county attorney, *vs.* ALBERT N. GREEN-
WOOD and others, county commissioners.

*Petition for writ of prohibition—who should be made parties to.   Exceptions to
the judge's finding of facts.   Constitutional law.   Judgment of county commis-
sioners—final in certain cases.   Construction of special statute.   Authority of
town in certain cases.*

By virtue of Pub. Laws of 1872, c. 8, § 3,* the previous sections thereof (chang-
ing the place of holding the supreme judicial court from Norridgewock to
Skowhegan, and authorizing the county commissioners to erect a court-house
in the latter place), were to be void, unless the town or citizens of Skowhe-
gan should, on or before March 1, 1872, without expense to the county, provide
suitable room and other accommodations for the court and officers, to the ac-
ceptance of a majority of the county commissioners; and secure to the county
the use thereof for the purposes, and during the time therein specified, and
the conveyance of a suitable site in Skowhegan for the county buildings.  By
§ 4, when such room and accommodations had been provided, the county
commissioners should cause the records in all the county offices, with the rec-
ords and files of all the courts, to be removed to the places prepared in Skow-
hegan, and cause notice of the facts to be published as therein directed.
On petition praying that a writ of prohibition may issue against the county
commissioners, prohibiting them from ordering such removal or publishing
such notice; *Held*, (1) That the county attorney had no right to institute this
process in his official capacity, or in behalf of the county; and, (2) That the
town of Skowhegan should have been made a party.

---

*STAT. OF FEB. 15, 1872.  SECT. 1.  The several terms of the supreme judicial
court which are now required to be holden at Norridgewock, in and for the coun-
ty of Somerset, shall, after the first day of March, in the present year, be holden
at Skowhegan, in said county; and all writs, processes of any kind, and all pro-
ceedings shall, after that time, be made returnable accordingly; and all writs,
processes and proceedings commenced prior to that time, and which would other-
wise be returnable to the March term of said court at Norridgewock, shall be en-
tered and have day in said court at Skowhegan.

SECT. 2.  Within five years from the passage of this act, the county commis-
sioners of the county of Somerset, or a majority of them, are hereby authorized,
empowered, and required to cause a court-house to be erected at Skowhegan
suitable for the accommodation of the courts and offices of said county, and to
procure a loan of money for that purpose, and assess taxes for the payment of the
same in such amounts, and at such times as in their judgment shall be most ad-
vantageous to the interests of said county.

Walton *v.* Greenwood.

Also *held,* That exceptions do not lie to revise the decision of the presiding judge upon the question whether the facts alleged in the information as the foundation for the writ, are substantially true as alleged.

Also *held,* That the act is not unconstitutional for the reason that by the provisions of § 3, the previous sections were to be void, unless the town or citizens of Skowhegan should perform the conditions therein mentioned.

Also *held,* That, in the absence of proof of fraudulent connivance, the judgment of the county commissioners, of the suitableness of the accommodations furnished, and of the sufficiency of the securities given was conclusive.

Also *held,* That the conditions provided in § 3 did not require the town or its citizens to furnish a jail.

Also *held,* That the town of Skowhegan had authority under the act to hire the apartments to be leased to the county, and through their selectmen specially authorized by vote to lease them for the purposes indicated in the act.

Also *held,* That a bond of 'the town of Skowhegan, and the inhabitants thereof,' to the county and the county commissioners of the county, executed in behalf of the town by the selectmen in their official capacity, and acting also as a committee specially authorized therefor, agreeing ' to convey to said county,

SECT. 3. The previous sections of this act shall be void and of no effect, unless the town of Skowhegan, or its citizens, shall, on or before the first day of March, in the present year, without expense to said county of Somerset, provide suitable room and other accommodations for said court and officers, to the acceptance of a majority of said county commissioners, and shall execute and deliver to them a good and sufficient lease, or other instrument, to secure the use thereof to said county for the purposes aforesaid during said five years, if the same shall be occupied so long for the purposes specified in this act, and shall also convey, or secure the conveyance in like manner, of a suitable site for county buildings in said Skowhegan.

SECT. 4. The county commissioners shall forthwith, after rooms for the accommodation of the court and officers as specified in section three of this act have been provided, cause the records in all the county offices, including the registry of deeds, registry of probate, the records of the county commissioners, and the records and files of all the courts which now are, or have been held in said county, to the places prepared for them in Skowhegan, which from that time forward shall be the shire town of said county, and said commissioners shall cause notice of the fact that suitable rooms have been furnished, as provided in section three of this act, and of the removal of the records as aforesaid, by publication in all the public newspapers printed in said county, also in the State paper, and the Lewiston Daily Journal, and to be continued in all the daily and weekly issues of each of said papers for three weeks successively thereafter.

SECT. 5. The inhabitants of Skowhegan are hereby authorized to raise money for the purposes named in this act, by loan or otherwise. Taxes therefor may be assessed at such times and in such amounts as said town may vote.

SECT. 6. All acts and parts of acts inconsistent with this act are hereby repealed.

SECT. 7. This act shall take effect when approved.

in such form and at such time within five years of this date as they may require, a suitable site for county buildings in said Skowhegan ... to the acceptance of the county commissioners of said county,' is a sufficient obligation to secure the conveyance of a suitable site for the county buildings, when a majority of the county commissioners shall see fit to exercise the power conferred in § 2.

Also *held*, That the legislature did not intend to make the selection of a site on or before March 1, 1872, mentioned in § 2, an indispensable prerequisite to the taking effect of the act.

ON EXCEPTIONS.

PETITION for a writ of prohibition against the county commissioners for this county.

The petition is brought in the name of Sylvester J. Walton, ' attorney for the State for said county, for and in behalf of the county of Somerset,' and alleges substantially,

That in pursuance of an act entitled an ' Act to change the place of holding the supreme judicial court in the county of Somerset, and to change the shire town of Somerset county,' passed on Feb. 15, 1872, the county commissioners met at Skowhegan, on March 1st, to examine rooms prepared for the court and officers, all included in what was claimed to be a lease to the county from the town, signed by one Folsom, Snow, and Eaton, selectmen and committee of the town, and to which the town derived title by several leases described [copies annexed], and received an obligation [annexed] of same date from the town of Skowhegan, signed by the selectmen as such, and as a committee for the purpose, agreeing to convey a suitable site for a court-house.

That at a court of county commissioners held at Norridgewock, on first Tuesday of March, 1872, the commissioners accepted the same and entered their acceptance of record;

That the above-named act was of no validity, and the county commissioners had no jurisdiction in the premises under it; that neither the town, nor any citizen of Skowhegan, has executed and delivered to the county good and sufficient lease or leases of the building, rooms, and vaults provided for the county, or other instrument to secure the use thereof to the county, as would appear by the copies thereof annexed to the petition; that no provision had

Walton v. Greenwood.

been made for a jail, or an office for the jailer; and that the county commissioners accepted the rooms and other accommodations so prepared, and adjudged as matter of law, that the papers presented, and the accommodations constituted a compliance with the requirements of the third section of the act.

That sufficient had not been done by the town or citizens to give the county commissioners jurisdiction, but that the petitioner feared they would act in the premises, remove the records, and publish the facts to the great injury and detriment to the interests of the county, wherefore prayed,

That a writ of prohibition might issue to the county commissioners, prohibiting them from ordering such removal, or publishing such notice, or doing anything further in the premises.

Annexed to the petition were

An obligation dated March 1, 1872, whereby 'the town of Skowhegan and the inhabitants thereof, by Levi H. Folsom, Daniel Snow, and Horace Eaton, undersigned selectmen of said town, and a committee thereof specially authorized thereto, in consideration of an act entitled ' an act,' etc., approved Feb. 15, 1872, hereby agree, and bind themselves to the county of Somerset, and the county commissioners of said county, to convey to said county in such form and at such time within five years of this date, as they may require, a suitable site for county buildings in said Skowhegan, which said site and conveyance shall be to the acceptance of the county commissioners of said county.

Also, lease of certain rooms and buildings from same to same, and executed in the same manner.

Also, lease from Skowhegan Hall Association to the inhabitants of Skowhegan; from Second Nat. Bank to same; Mrs. J. H. Williams to same, of the rooms, vaults, etc., named in the lease from the town to the county.

A copy of the judgment of the county commissioners dated March 1, 1872, annexed to the petition, was as follows:

SOMERSET, ss. :—We certify that on the first day of March, A. D. 1872, the town of Skowhegan provided suitable room and other

accommodations for the courts and county officers of this county to our acceptance, and have executed and delivered to us a good and sufficient lease of the same, for the term of five years, free from expense to the county, which we have accepted and placed on file ; and have also given to us an obligation to convey to said county in such form and at such time within five years of this date, as the county commissioners may require, a suitable site for county buildings in said Skowhegan, which said site and conveyance shall be to the acceptance of the county commissioners of said county, which obligation we have accepted and placed on file as a full compliance with the provisions of the act requiring said town of Skowhegan to convey or secure the conveyance of a suitable site for county buildings in said Skowhegan.

At the March term of this court held at Augusta, in the county of Kennebec, on March 11, 1872, notice to the county commissioners of Somerset county was ordered returnable at the term of this court, to be held at Norridgewock, for the county of Somerset, on the third Tuesday of March, and a temporary prohibition was granted.

At the March term, 1872, at Norridgewock, the respondents filed their answer, alleging substantially,

1. That the town of Skowhegan fully complied with all the conditions of the act of the legislature, within the time specified, to the acceptance of the county commissioners.   [Here follows a detailed statement of the acts of the town under this head.]

2. That their acceptance of the premises was conclusive.

3. That but for the order of the court at Augusta, they should have performed the remaining duties imposed on them by the act, and caused the records to be removed to the places prepared for them, and should have published the notices commanded by the act.

4. That a writ of prohibition can only be issued to some court to restrain judicial action, and not ministerial acts, and that the acts complained of were purely ministerial.

5. That such writ can only be issued to some inferior court hav-

ing no jurisdiction of the subject-matter complained of; that the act conferred in express terms the most ample and exclusive jurisdiction over the entire subject complained of.

6. That the town of Skowhegan should have been made a party ; and

7. That by the statute and common law they are the only persons authorized to institute proceedings for the county.

Upon a hearing at Norridgewock, at the time appointed, the presiding justice decided that the conditions of the act to change the place of holding the supreme judicial court for the county of Somerset, and to change the shire town of Somerset county approved Feb. 15, 1872, had been complied with, and that the supreme judicial court must be held at Skowhegan, and thereupon immediately went to Skowhegan, and opened court, and dismissed the temporary prohibition. And the petitioner alleged exceptions.

*J. H. Webster*, for the petitioner.

The act of the legislature never became a law. R. S., c. 78, § 11; Const. of Maine, Art. I, § 2; Art. IV, part 1, § 1, part 3, § 2.

The conditions in the act have not been performed. No jail or substitute for one is furnished. R. S., c. 77, § 2; c. 80, §§ 22, 26.

The town of Skowhegan were not authorized by law to hire apartments to let, it not being a power conferred upon it by the general statute, nor by this act, *Hooper* v. *Emery*, 14 Maine, 375 ; *Mitchell* v. *Rockland*, 41 Maine, 363 ; *Same* v. *Same*, 45 Maine, 496 ; *Same* v. *Same*, 52 Maine, 118 ; *Small* v. *Danville*, 51 Maine, 359.

The selectmen cannot bind the town without a vote.

The town obtained no legal interest in the apartments by the leases which the selectmen received, and conveyed none by their lease to the county.

The lease from the Second Nat. Bank was invalid,—neither the president and cashier, nor the bank having any power to make it. R. S., c. 46, § 15; Laws of Cong. of 1863, c. 58; *Ibid.* of 1864, c. 86, §§ 8, 9, 28, 53, 69.

The decision of the county commissioners as to the suitableness of room and other accommodations is subject to revision by this court.   R. S., c. 77, §§ 3, 4.

Neither the town nor its citizens, have conveyed or secured the conveyance of a suitable site for county buildings, to the acceptance of the county commissioners.

The records not removed under § 4.

No particular form of proceeding is necessary in matters of this kind, as this court has supervision of inferior courts, and control of their own records.   R. S., c. 77, § 3.

Writ of prohibition obtained in two ways,—petition and suggestion.   Bac. Abr., ' Prohibition ' A. C. E., Anc. Char. 330, 331.

It is grantable when inferior court or officer exceeds his jurisdiction or wrongly executes his trust.   Bac. Abr. Prohibition J. H.; *Gould* v. *Gapper*, 5 East, 345; *People ex re Averill* v. *Works*, 7 Wend. 486; *Harriman* v. *Co. Commissioners*, 53 Maine, 83.

*D. D. Stewart*, for the respondents.

As to the remedy.   *Washburn* v. *Phillips*, 2 Met. 298; *Ex-parte Davis*, 41 Maine, 39 and 57; 2 Burrill's L. Dict., 834, 835; 3 Blackstone, 112–114 and note; *People* v. *Supervisors Queens Co.*, 1 Hill, 200, 201; 2 Sellon's Prac., 308, ' Prohibition.'

As to the conclusiveness of decision of Co. Commissioners. *School Dist.* v. *Dresden*, 54 Maine, 512; *Baxter* v. *Tabor*, 4 Mass. 364, 366; *Codman* v. *Lowell*, 3 Greenl. 52, 57; *Hanson* v. *Dyer*, 17 Maine, 96; *Cary* v. *Osgood*, 18 Maine, 152; *Cooper* v. *Bakeman*, 33 Maine, 379; *Zadden* v. *Hanson*, 39 Maine, 359.

On right of county attorney to institute this process.   R. S., c. 78, § 10; *Hampden* v. *Franklin*, 16 Mass. 88; *Emerson* v. *Co. of Washington*, 9 Greenl. 96; R. S., c. 78, § 13.

Town a party.   *Ex-parte Davis*, 41 Maine, 59.

BARROWS, J.   Obviously there are insuperable technical objections to the maintenance of this process, which seems throughout to have been irregular and inapplicable to the case as stated by the petitioner.

Walton *v.* Greenwood.

The prayer of the petition is, 'that a writ of prohibition may issue to said court of county commissioners (meaning the respondents), prohibiting them from causing the records and files in the various county offices in Somerset county to be removed to Skowhegan, and from causing notice of that fact to be published in certain news papers, as provided in § 4 of an act of the legislature approved Feb. 15, 1872.

1. The petition is subscribed and sworn to by Sylvester J. Walton as county attorney for Somerset county, and the only persons or parties named as respondents therein, are 'Albert N. Greenwood, John Russell, and Sylvanus B. Walton, county commissioners of Somerset county.'

Proper and competent parties are indispensable in every legal process. The petitioner here asserts no personal grievance. He undertakes to intervene in behalf of the county and to represent it in this proceeding. In view of R. S., c. 78, § 10, which confides this power in express terms to the county commissioners, we do not think it competent for the county attorney to interfere of his own motion in behalf of the county in this manner. Under the section referred to, the county commissioners are to 'represent' the county,—are 'to have the care of its property and the management of its business.' They are responsible directly to the people who elect them for the manner in which they discharge their duties. But while they are in office, they, and not the county attorney are to represent the county in business of this description, and the county attorney acts under their direction and simply as an attorney, in the matters in which the county is interested.

It is true, that in cases where a writ of prohibition appears to be necessary to keep an inferior court within the limits of the jurisdiction prescribed by the laws and statutes of the State, it may issue at the suggestion of, or upon information laid by, either of the parties or by a mere stranger. Bacon's Abr., Vol. IV, p. 243, tit. Prohibition (C).

It may well be, that if the county attorney or any other citizen of the county, acting in his individual capacity, laid before us an

information,  suggesting  that  the  court  of  county  commissioners
were  usurping  any  authority  over  the  county  records  not  given
them  by  the  statutes  of  the  State,  or  were  exercising  their  powers
in  a  manner  unauthorized  by  law,  we  should  feel  bound  to  listen  to
his  proofs,  and  apply  the  remedy  required.    But  it  does  not  follow
that  when,  as  in  this  petition,  he  assumes  to  speak  ' for  and  in  be
half  of  the  county  of  Somerset,'  in  his  official  capacity  only,  we
can  disregard  the  remonstrance  of  these  respondents,  claiming  that
they  alone  legally  ' represent '  the  county,  and  ' have  the  care  of
its  property,  and  the  management  of  its  business,'  and  that  the
county  attorney  has  no  right,  in  the  name  of  the  county  or  in  his
official  capacity,  to  institute  a  process  of  this  nature.

2.  But  if  there  is  a  want  of  a  proper  party  plaintiff,  it  is  equally
apparent,  that  inasmuch  as  the  writ  of  prohibition,  if  granted,  op-
erates  against  the  party  adversely  interested,  the  town  of  Skowhe-
gan  has  such  an  interest  in  the  question  here  presented,  that  it
ought  to  be  made  a  party  respondent  and  have  notice  of  the
pendency  of  this  petition.

To  proceed  without  such  notice  to  the  town  would  violate  the
fundamental  rule  that,  in  all  suits  in  courts  of  common  law,  a  ser-
vice  upon  the  persons  or  parties  adversely  interested  is  indispensa-
ble.  *Ex-parte Davis*,  41  Maine,  59 ;  *Penobscot R. R. Co.*  v.  *Weeks*,
52  Maine,  456.

3.  This  case  comes  before  us  only  upon  exceptions  filed  to  the
rulings  and  adjudication  of  the  judge  presiding  at  *nisi prius*.    The
question  presented  is,  were  the  rulings  and  decision  erroneous  as
to  matters  of  law ?

What  is  called  ' the  proof  of  the  suggestion,'  or,  in  other  words,
the  question  whether  the  facts  alleged  in  the  information,  upon
which  the  claim  for  the  prohibition  is  founded,  are  substantially
true  as  alleged,  was  submitted  to  him,  and  upon  well-known  rules
his  decision  upon  that  question  is  binding  and  conclusive,  and  can-
not  be  reviewed  on  exceptions.

Now  the  exceptions  themselves  state  that  he  decided  ' that  the
conditions  of  the  act  to  change  the  place  of  holding  the  supreme

judicial court for the county of Somerset, and to change the shire town of Somerset county, approved February 15, 1872 ' (and above referred to), 'had been complied with.' If this were so, then the county commissioners were expressly required, by the act referred to, to do that which the petitioner asks us to prohibit.

The gravamen of the petitioner's complaint appears to be that these conditions have not been complied with, and this is alleged, with much detail and divers specifications, as a reason why the prohibition should be granted.

The finding of the judge as set forth in the exceptions negatives these allegations directly, and this should have been the end of the case. It has been so often held, that exceptions do not lie to correct error in the decision of questions of fact, that a citation of authorities is needless. This precise point seems to have been in the mind of the judge when he certified the exceptions as 'correct and allowed if exceptions will lie in the case.' The order of the presiding judge, dismissing the temporary prohibition and the petition, was in perfect accordance with the long-settled course of proceeding upon applications of this sort, and the petitioner had no ground for complaint thereof. For 'though a surmise be matter of fact and triable by a jury, yet it is in the discretion of the court to deny a prohibition when it appears to them that the surmise is not true.' *Aston Parish* v. *Castle Birmidge Chapel*, Hobart, 67.

' When a prohibition is moved for, the method is for the party to file a suggestion in court, stating the proceedings that have been had in the court below, and then suggesting the reason why he prays the prohibition ; upon this the court grants a rule for the other party to show cause why a writ of prohibition should not issue ; and if it appear to the court that the surmise is not true or not clearly sufficient to ground the writ upon, they will deny it.' Bac. Abr., Vol. IV, tit. Prohibition (A) in notes.

It is only when the cause alleged is seen to be true and clearly sufficient, that the prohibition is granted.

While it it thus evident, that, whatever might be the general merits of the petitioner's case, this process must fail; yet, inasmuch

Walton v. Greenwood.

as those merits have been elaborately discussed by counsel, and as the matter involved possesses sufficient local interest and importance to make it probable that the main questions, if not now settled, would be presented in some other form, we think it best not to base our judgment exclusively upon objections simply technical, but to give the positions taken in behalf of those opposed to the removal of the county seat from Norridgewock to Skowhegan, a deliberate and careful consideration.

The case is this. Section 3, of the 'act to change the place of holding the supreme judicial court in the county of Somerset and to change the shire town of Somerset county runs thus : ' The previous sections of this act shall be void and of no effect unless the town of Skowhegan, or its citizens, shall on or before the first day of March, in the present year, without expense to said county of Somerset, provide suitable room and other accommodations for said court and officers, to the acceptance of a majority of said county commissioners, and shall execute and deliver to them a good and sufficient lease or other instrument, to secure the use thereof to said county, for the purpose aforesaid, during said five years, if the same shall be occupied so long, for the purposes specified in this act, and shall also convey or secure the conveyance in like manner, of a suitable site for county buildings in said Skowhegan.' Hereupon it is argued that here was an unconstitutional delegation of the power of legislation to the town of Skowhegan, or its citizens, at whose option the act was to be void, and that there are constitutional objections to a piece of legislation which makes the place where the courts shall be holden in a county, to depend upon the acts or omissions of any particular town or its citizens, and the judgment of the county commissioners thereupon. We do not find either in the letter or the spirit of the constitution anything which forbids the legislature to attach conditions of this description to their acts. Upon the wisdom or expediency of so doing, it is no part of our duty to express an opinion. Of that, the law-making power, commissioned by the people for that purpose, must judge. Our office is to give a just and proper interpretation to all these

clauses as we find them spread upon the statute-book, and to hold them valid and binding, unless they appear clearly to be repugnant to the constitution of this State or to that of the United States.

The conditions are as much part of the act as the positive provisions to which they are subjoined, and which they qualify. The whole taken together, expresses the will of the legislature in the form of law, and, not being in conflict with any constitutional·provisions, but on the other hand being sanctioned by numerous precedents, must be held valid and binding.

Again it is urged that the act has become void under its own provisions, by reason of an alleged non-compliance with its conditions.

The conditions are found in § 3 above recited, and in substance were that the town of Skowhegan, or its citizens, should on or before March 1, 1872, without expense to the county, provide suitable room and other accommodations for this court and the county officers to the acceptance of a majority of the county commissioners, and give a good and sufficient lease or other instrument to secure the use thereof to the county for five years, if so long needed, and 'convey or secure the conveyance in like manner of a suitable site for county buildings in said Skowhegan.'

These several matters are required to be done to the acceptance of a majority of the existing board of county commissioners, who in all business matters represent the county, and are charged, by law, with 'the care of its property and the management of its business.' Were the several conditions fulfilled?

It appears that they were, at all events, to the full satisfaction, not of a majority merely, but of the entire board. The justice of this court, who presided at the term, seems to have so found in express terms; and the diligence and acumen of the petitioner's counsel, though fruitful in surmises and suggestions, fail to raise in our minds a serious doubt that there was a substantial compliance with all the conditions of the act.

We remark, in the outset, that wherever the legislature made the county commissioners the judges of the suitableness of the accom-

modations to be furnished, and of the sufficiency of the securities to be given, by providing for the performance of the condition ' to the acceptance of a majority ' of the commissioners, the judgment of such majority, in the absence of proof of fraudulent connivance, must be deemed final and conclusive, and not subject to revision by any tribunal whatever.

The county commissioners, besides being the general business agents of the county, were specially empowered and directed by this act to cause the removal and publication, which the petitioner asks us to prohibit, when the rooms for the accommodation of the court and officers have been provided as specified in the third section, *i. e.* to the acceptance of a majority of said county commissioners.

From the nature and necessities of the case, the provision can only be construed as confiding to the commissioners an unlimited discretion and power to determine whether the conditions had been so performed that they ought to be accepted, and, in case such was their judgment, to accept them, and forthwith to act in pursuance of their decision.

And that decision is not to be revised for mere errors in judgment, and cannot be impugned for anything short of corruption and fraudulent collusion, of which there is here no pretence.

Such we believe to have been the uniform current of decisions in analogous cases. We see not how it could be held otherwise, in the present instance, without involving the whole course of legal proceedings in the county at every step in inextricable confusion and uncertainty.

We think this substantially covers the whole case. The commissioners executed in good faith a power which was intrusted to them by the legislature with full knowledge of their liability to err; and their decision of the questions necessarily involved, right or wrong, must be held conclusive. It would be a strange and totally inadmissible construction of the legislative act, which would involve the administration of justice in that county in such uncertainty as must prevail until a final decision was reached, if it were

made to depend upon the view which another fallible human tribunal might take of the legal accuracy of the judgment of the commissioners.

While this construction of the act (which we adopt upon the fullest consideration) must be decisive of the case against the petitioner, we have not omitted to review the various points where in it is claimed that the commissioners erred ; and we think that a detailed examination of them would lead to the same result.

At *nisi prius* it seems to have been conceded, that the certificate of the county commissioners was full and satisfactory evidence that the full condition, which calls for the provision of ' suitable room and other accommodations ' for the court and county officers, had been complied with. Now, however, the ingenuity of counsel has discovered that a jail, or at least a substitute for one, should have been included in these accommodations, and that, notwithstanding they were found satisfactory by the county commissioners, they are in other respects deficient.

The case is devoid of any evidence to impeach the commissioners' certificate in any particular. We could not accept the assertions of counsel in lieu of evidence ; and, moreover, we are clear that the language of the condition does not require the town or its citizens to furnish a jail. Compare the language used with that of Laws of 1865, c. 334, § 3, touching the same subject.

It is insisted that the leases which have been given and accepted, to secure the use of these rooms for the five years, if so long required, are invalid, and divers suggestions are thrown out in derogation of the title and authority of those by whom they purport to have been made. But not one of these suggestions is sustained by any proof, and we fail to see that they have any foundation, either in law or fact. Power to do any specific act, embraces the power to do all that is incidentally necessary to its accomplishment. The town of Skowhegan unquestionably has authority under the act to hire the apartments to be leased to the county ; and it seems to have been done by the selectmen, not only in their capacity as the

prudential agents of the town, but as a special committee duly authorized by a vote of the town at a legal meeting.

The objections to the title and authority of the leases of the town, are equally wanting in the proof that was necessary to give them any vitality. That surely ought to be deemed sufficient which accomplishes the purpose for which it was designed. The county has undisturbed possession of the premises by virtue of these leases, and we see no good cause to question their validity. *Omnia præsumuntur rite acta*, at least, until some scintilla of evidence appears to the contrary. So long as the county has the enjoyment of the premises which the leases were designed to secure, neither the petitioner nor any other inhabitant of the county seems to have any substantial ground of complaint on that score.

Particular stress is laid upon the alleged failure to ' convey or secure the conveyance in like manner of a suitable site for county buildings in said Skowhegan.' The commissioners accepted, as a fulfillment of this condition, the bond of ' the town of Skowhegan and the inhabitants thereof,' to the county of Somerset and the county commissioners of said county, executed in behalf of the town by the selectmen in their official capacity and acting also as a committee specially authorized therefor, agreeing 'to convey to said county in such form and at such time within five years of this date, as they may require, a suitable site for county buildings in said Skowhegan . . . to the acceptance of the county commissioners of said county.'

We see no good reason to question the validity and sufficiency of this obligation to secure the conveyance of a suitable site for the county buildings at any time within five years, when a majority of the county commissioners shall see fit to exercise the power given them, in § 2 of the act, to erect such buildings. The legislature required either the conveyance of a suitable lot, or security that such conveyance should be forthcoming when necessary. The commissioners accepted the security above described.

It is argued that here was a misconstruction of the statute which constituted their authority to act in the premises. If it were mani-

festly so, we might be justified in interfering with a writ of prohibition.

But we think that the better opinion is, that the legislature did not intend to make the selection of a site within fifteen days after the passage of the act an indispensable pre-requisite to its taking effect. The county commissioners were to erect the county buildings at such time as they might select within five years, and the design of the clause under consideration was, to secure the conveyance without expense to the county, of such a site as should be acceptable to the county commissioners.

We think the condition is fulfilled by securing the conveyance of a suitable site which shall be acceptable to such board of county commissioners as shall initiate the erection of the buildings, and that this is accomplished by the bond of the town.

The bond is in substance and effect a security for the conveyance of such a lot as the county, through its commissioners, may deem suitable; and if the town should fail to convey according to their agreement, they must be held to pay for such lot as the commissioners may reasonably select when they proceed to build. The alternative of conveying or securing the conveyance seems to have been designed to enlarge the time for selection to the manifest advantage of the county.

Even if we did not consider the acceptance of the bond by the commissioners conclusive, we should be ready to hold that, as to this item, as well as all the others, the conditions prescribed by the act had been substantially complied with.

*Exceptions overruled.*

APPLETON, C. J.; KENT, WALTON, and DICKERSON, JJ., concurred.