BENONI LACHANCE v. THE AUDITOR GENERAL.

*Inquest and burial expenses—On body of non-resident stranger—Allowance of by circuit court final.*

1. The Auditor General has no control over the action of the circuit court in allowing the account of a justice of the peace for expenses incurred under How. Stat. § 9593,[1] authorizing such officer to hold an inquest upon the view of the dead body of a stranger, etc., and *mandamus* lies to compel him to draw his warrant upon the State treasury for the account as allowed.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—Under the Constitution, none of the powers of the Auditor General are defined as an auditing officer, and under the Constitution he is only empowered to examine and liquidate claims in cases provided for by law. How. Stat. § 274,

*b*—The Auditor General is given no appellate power over other auditing bodies; and his duty in regard to allowances lawfully made by the proper bodies or persons is the ministerial duty of issuing the proper warrant.

*c*—The auditing of claims against the State is not, and never has been, a proceeding in the nature of a suit. It is an administrative function, performed by the persons to whom the law has entrusted it; and the State imposes such duties where it is supposed they will be properly atttended to.

*d*—It is to be taken for granted that the Legislature can protect the State by all necessary safeguards; and neither any State officer nor this Court has been given any power to substitute his or our judgment for that of the auditing authority, acting on matters legally referred to that person or body.

*e*—It was not unlawful, which is all we can consider; and it is not, so far as we can judge, usually improper to have thorough medical examination upon an inquest. Its object at common law was to discover whether any occasion existed for criminal proceedings, or whether there is reason to suppose death was not by natural causes.

*f*—The statute not only authorizes, but requires, a decent burial, and does not require the dead body of a stranger to be treated with neglect, or buried like a dog, without ceremony.

---

[1] Amended by Act No. 103, Laws of 1885.

*Mandamus.* Submitted October 24, 1889. Granted November 8, 1889.

Relator applies for *mandamus* to compel respondent to draw his warrant on the State treasury to pay relator's claim for burial expenses, etc., as allowed by the circuit court, under the statute. The facts are stated in the opinion.

*Charles R. Brown & Son,* for relator, contended:

1. The case of *Locke v. Wayne Circuit Judge,* 62 Mich. 408, holds that it is the duty of the circuit court to allow claims of the nature made by relator; that the petitioner's affidavit makes a *prima facie* case, and that the judge may require such further proofs as he may deem necessary; all of which was done in this case.

*S. V. R. Trowbridge,* Attorney General, for respondent, contended:

1. It may be admitted that a statute which should authorize any debt or damages to be adjudged against a person upon purely *ex parte* proceedings, without a pretense of notice, or any provision for defending, would be a violation of the Constitution, and void; citing Cooley, Const. Lim. (5th ed.) 499, 500 (note 1); *Rockwell v. Nearing,* 35 N. Y. 314; *Mason v. Messenger,* 17 Iowa, 270; *Strachan v. Brown,* 39 Mich. 168; *Denison v. Smith,* 33 Id. 158; *Nations v. Johnson,* 24 How. 195.

2. The circuit court, while acting under the statute in question, acts as a court of special and limited jurisdiction, which must appear upon the face of the proceedings; citing same authorities.

3. A glance at the items of this account is sufficient to convince every member of this Court that the claim is an extravagant and unjust one. Twenty dollars for clothes to dress the remains, as well as carriages to carry minister and bearers to officiate at such a funeral service as this appears to have been, are claims so evidently improper that it cannot be the duty of any person who is called upon to look after the rights or interests of the State to allow the same.

CAMPBELL, J. Relator applied to the Auditor General for a warrant on the State treasury for the amount of

his claim as a justice in holding an inquest on the body
of a stranger, and for the expenses of burial. The claim
was regularly presented to the circuit court, and testimony introduced concerning its items, and the claim presented to the Auditor General is the one audited by the
circuit court.

Upon receipt of the claim the Auditor, by his deputy,
objected to some of the items as larger than was necessary,
and passed some strictures on the circuit court for acting
without notifying the State; and in response to the order
to show cause why *mandamus* should not issue the same
reasons are suggested.[1]

By section 9593 of Howell's Statutes, the justice who
holds an inquest upon the view of the dead body of a
stranger, and finds and certifies that he was a stranger,
not belonging to this State, is required to have the body
" decently buried;" and it is declared that—

"The expenses of burial, with the justice's fees, and
all the expenses of the inquisition, if any was taken,
shall be paid to the justice of the peace from the State
treasury; the account of such expenses and fees being
first allowed by the circuit court for the county."

Under the Constitution, none of the powers of the
Auditor General are defined as an auditing officer, and
under the Constitution he is only empowered to examine
and liquidate claims in cases provided for by law. How.

---

[1] The objections referred to are as follows:
1. One day's service to bury body _____ $3 00
   (Objected to because there is another charge of $6.00 for
   digging grave and burying body.)
2. Carriages to take minister and bearers out_____ 5 00
   (Not considered usual or necessary in such cases.)
   Fees paid minister_____ 2 00
   Fees for doctor aiding in medical examination _____ 3 00
   (Objected to because there is another charge of $5.00 for
   medical expert, which is believed to be sufficient.)
3. Bill of clothes to dress, etc_____ 20 00
   (Objected to as not being needed. If anything was necessary, a simple winding sheet would have been sufficient.)
                                                              _____
   Total_____$33 00

Stat. § 274. He is given no appellate power over other auditing bodies; and his duty in regard to allowances lawfully made by the proper bodies or persons is the ministerial duty of issuing the proper warrant.

The auditing of claims against the State is not, and never has been, a proceeding in the nature of a suit. It is an administrative function, performed by the persons to whom the law has intrusted it; and the State imposes such duties where it is supposed they will be properly attended to. In a very large number of cases the courts and other auditing bodies would have their business greatly impeded, and witnesses would be put to oppressive delay and trouble, if a contest of litigious nature should be required before hearing and allowance. The laws have from the earliest period placed the allowance of local services in the control of some local body or officer, and the circuit courts have been selected for this in many cases. One object of such selection is to secure the best judgment of persons located where the facts and witnesses can be best considered, and who are assumed capable and likely to apply a legal scrutiny. It is to be taken for granted that the Legislature can protect the State by all necessary safeguards; and neither any State officer nor this Court has been given any power to substitute his or our judgment for that of the auditing authority, acting on matters legally referred to that person or body.

In the present case the claim was presented and heard by the tribunal appointed by law to pass upon it, and the items allowed are the result of that hearing. All of them are such as relate to the inquest or burial; and they, except for fees allowed by law, are for moneys expended by relator in the discharge of his duty. The circuit court was in a better position than either respondent or this Court can be to know whether they were more liberal than was desirable. But, however this may

be, they were actually incurred; and that court approved them, and is not, when so acting, subject to our criticism. If any further restrictions are required, the Legislature can provide them. There is no more legal reason to assume the circuit court will not do its duty than that any other officer or court will do so.

It was not unlawful, which is all we can consider; and it is not, so far as we can judge, usually improper to have thorough medical examinations upon an inquest. Its object at common law was to discover whether any occasion existed for criminal proceedings, or whether there is reason to suppose death was not by natural causes. There is nothing in this account indicating that the inquest was not properly and judiciously conducted.

The statute, also, not only authorizes, but requires, a decent burial, and does not require the dead body of a stranger to be treated with neglect, or buried like a dog, without ceremony. What was honestly done by the justice, and approved by the circuit judge, who sits in the vicinity, and has every means of judgment, is not outside of the discretion given by law, and is not open to review.

The Auditor General seems to have acted in a proper desire to have it determined how far his duties extend. He is not responsible for the law, and he has no control over its administration by the circuit courts.

The *mandamus* must be allowed, with the costs of this Court, according to law, payable out of the treasury.

The other Justices concurred.