STANLEY W. TURNER, AUDITOR GENERAL, V. CLEMENT
SMITH, CIRCUIT JUDGE OF CALHOUN COUNTY.

*Inquest—Coroner's fees and expenses—Payment by State—Allow-
ance by circuit court.*

1. The provisions of 3 How. Stat. § 9593, for the allowance by the
circuit court of the expenses of an inquisition upon the dead
body of a stranger, not belonging to this State, prior to their
payment by the State, is authorized by article 8, § 4, of the
Constitution, which provides for the examination and adjust-
ment by the Board of State Auditors of all claims against the
State not otherwise provided for by general law.

2. Where notice of an application for the allowance of the account
of a coroner for the expenses incident to an inquisition on the
dead body of a stranger, not belonging to this State, is given
to the prosecuting attorney, and he appears on behalf of the
State, it cannot be said that the State was not represented,
even if the court was not authorized to allow the account
without the State being heard.

3. 3 How. Stat. § 9593, has clothed the circuit court with power
to allow the account of a coroner in such a case; and, unless
some illegal claim has been allowed, the finding of the court
cannot be disturbed.

4. Where the return to a writ of *certiorari* issued to review the
order of the circuit court allowing such an account, which
includes a charge for money paid to a stenographer, shows
that the stenographer was employed at the request of the
prosecuting attorney, and that his services were necessary to
assist the officers in getting at the facts and circumstances, it
cannot be said that the allowance of that item of the account
was illegal.[1]

*Certiorari* to Calhoun.    (Smith, J.)    Argued April 25,
1894.    Decided June 16, 1894.

---

[1] The question when a coroner's inquest is necessary or proper
is examined, with a review of the decisions and statutes on the
subject, in a note to *Lancaster Co. v. Holyoke* (Neb.), 21 L. R.
A. 394.

*Certiorari* to review an order of the circuit court allowing an account for services as coroner.    Affirmed.    The facts are stated in the opinion.

*A. A. Ellis,* Attorney General, for petitioner.

*O. S. Clark,* for respondent.

LONG, J.    This is a proceeding by *certiorari* to review the action and decision of the circuit court in allowing the account of L. M. Gillette, one of the coroners of Calhoun county, against the State, for services, under 3 How. Stat. § 9593, for holding an inquest upon the dead body of a stranger.    This section provides that when the inquisition is upon the dead body of a stranger, not belonging to this State, the fees of the coroner, and all the expenses of the inquisition, shall be paid by the State, "the account of such expenses and fees being first allowed by the circuit court for the county."

It appears that on October 20, 1893, a most disastrous wreck occurred on the Chicago & Grand Trunk Railway, at Battle Creek.    Many persons were killed, and many more injured.    Among those killed was one Mrs. C. W. Van Dusen, of Sprout Brook, N. Y.    An inquest was held upon her body for the purpose of ascertaining the cause of her death, and to place the blame, if any there was, upon the proper parties.    A bill for this inquest was presented to the circuit court, as provided by this statute, and allowed.    After its allowance, it was forwarded, with the proper certificate, to the Auditor General, for his warrant.    After examining the account, the Auditor General was not satisfied with many of the charges, or the action of the court thereon.    He sued out a writ of *certiorari* from this Court, claiming—

1. That the court below did not acquire any jurisdiction to pass upon the account, for the reason that no

notice was given to any one authorized to appear for the State, and that a notice to the prosecuting attorney of the county was not sufficient, as his interests were antagonistic to the State.

2. That certain items enumerated in the affidavit for the writ are no part of the expenses of the inquisition, and the court below had no power to allow them.

3. That certain items were greatly in excess of the amount authorized by the statute.

4. That a great majority of the witnesses charged for were not subpoenaed for the purposes of the inquisition, but were present merely for the purpose of identification of persons other than Mrs. Van Dusen.

5. That the stenographer's fees charged for are not authorized by the statute, and, if one was employed, he should be paid by the county, and not by the State.

6. That certain fees for serving subpoenas were duplicated, service being claimed by the sheriff and by the coroner, and that the item for expense in shipping the body of a Mrs. Aldrich home, when she was a resident of this State, was unauthorized.

Article 8, § 4, of the Constitution, provides that—

"The Secretary of State, State Treasurer, and Commissioner of the State Land Office shall constitute a Board of State Auditors, to examine and adjust all claims against the State not otherwise provided for by general law."

Under this provision of the Constitution, the Legislature has the power to provide by general law some other tribunal to adjust this class of claims against the State.

The statute under which this inquest was held is chapter 336, How. Stat. It is provided in that chapter that justices of the peace shall take inquests upon the view of the dead bodies of such persons as shall have come to their death suddenly, or by violence. The justice is authorized to summon a jury to inquire, in behalf of the people of this State, when, in what manner, and by what means the person came to his death, and to make a true inquest thereof. He may issue subpoenas, and enforce the attendance of witnesses. He may subpoena a competent

physician or surgeon for the purpose of making a *post mortem* examination, and to testify to the result of such examination. And, in all cases where murder or manslaughter is supposed to have been committed, the testimony of all witnesses examined shall be reduced to writing by the justice, and subscribed by the witnesses. The jury, upon inspection of the body, and after hearing the witnesses and making all needful inquiry, are to draw up, and deliver to the justice, their inquisition, in which they shall find and certify when, in what manner, and by what means, the deceased came to his death; and, if it appears that he came to his death by unlawful means, the jurors shall forthwith state who was guilty, either as principal or accessory, or was in any manner the cause of his death, if known. If the jury find that a murder, manslaughter, or assault has been committed upon the deceased, the justice shall bind over such witnesses as he thinks necessary to appear and testify at the next court to be held in the same county, and return into court the inquisition, written evidence, recognizances, and examinations by him taken, and may commit to jail any witness who shall refuse to recognize in such manner as he shall direct. The justice may also issue a warrant for the apprehension of the accused person. By the last section of the act, it is provided that when he shall take an inquest upon the dead body of a stranger, or, being called for that purpose, shall not think it necessary that an inquest be taken, he shall cause the body to be decently buried. The next succeeding sections (being sections 9594 and 9595, How. Stat.) provide that all provisions of law relating to holding inquests by justices of the peace are made applicable to inquests held and to be held by coroners, and that all powers by the general laws of the State conferred upon justices of the peace, relative to such inquests, are conferred upon the coroners of the several counties.

Acting under these provisions of the statute, the coroner, Mr. Gillette, proceeded to hold the inquest. By the return of the circuit judge, it appears that he fully and thoroughly investigated the account, and learned the particulars in relation to the items thereof, before certifying to the same. From this return, it not only also appears that the court below carefully examined the testimony taken at the inquest, but on the trial before him of Mr. Scott, for manslaughter, growing out of the wreck, many of the facts were then shown. The court also visited the scene of the wreck, and learned many of the facts about the matters from which the account is made up. On the hearing of the account the prosecuting attorney of the county appeared for the State, and, as the court understood it, to protect the interests of the State. From the wreck, 24 bodies were taken, —some nearly consumed, and all burned beyond recognition. The court below says of this that the work of identification by the coroner and his assistants, by the fragmentary articles of clothing, ornaments, etc., must have been an undertaking that would have disheartened most people; that, in connection with this, all of these were strangers, and with the numerous telegrams from, and personal inquiries of, friends and relatives, the classification and numbering of bodies and the effects found on or near each, the court was convinced of the correctness of the account. All the dead, with one exception, were strangers, and non-residents of the State. In relation to the charge of the stenographer, the court certifies that one was employed at the request of the prosecuting attorney, and his services were necessary to assist the officers in getting at the facts and circumstances. It is denied by the court that witnesses were subpoenaed to identify other bodies, or for any other purpose than the legitimate purposes of the inquisition; and he denies that any charges

were duplicated, or in excess of the allowance permitted by statute.

Section 551, How. Stat., provides that—

"The prosecuting attorneys shall, in their respective counties, appear for the State or county, and prosecute or defend in all the courts of the county all prosecutions, suits, applications, and motions, whether civil or criminal, in which the State or county may be a party, or interested."

The statute authorizing the circuit court to allow the account does not in terms provide for notice of the application for the allowance of the same to any one authorized to appear for the State, but in this case notice was given to the prosecuting attorney, and he did appear. It cannot be said that the State was not represented, even if the court below was not authorized to allow the account without the State being heard.

We need not go into the various items of the account. The statute has clothed the circuit court with power to allow such accounts; and, unless there has been some illegal claim allowed, his finding cannot be disturbed. The matter of stenographer's fees seems to have been incurred under the direction of the prosecuting attorney, and it cannot now be said that the allowance of this item was illegal. Everything seems to have been properly done by the coroner, and the court below, after a full investigation, allowed the claim. We cannot now set up our judgment against that of the circuit judge. That is the tribunal fixed by the Legislature before whom such accounts are to be brought, and the action there taken does not seem to be outside the discretion given by law. *Lachance v. Auditor General*, 77 Mich. 567.

The finding of the court below will be affirmed.

The other Justices concurred.